In Special Term—June 1854. GHOLSON, J. presiding.

Administratrix of B. G. EASTON *v*. ELLIS & MORTON.

A power is absolutely revoked by the death of the principal, unless it be coupled with an "interest" in the thing itself.

The liability of a principal for the acts of his agent, after the agency ceases, is confined to those cases where he is bound to give notice, and neglects to do so.

Partners are liable for the acts of each other after dissolution, if in the same business, and no notice be given.

Otherwise, as to the acts of a clerk after discharge.

Death of one partner operates as an immediate and absolute dissolution and termination of the agency at Common Law, whether known or not.

And this operates from the time of the death, upon the parties, as well as third persons.

Assumpsit to recover the amount of three checks drawn on defendants by E. Easton, and paid by them after decease of B. G. Easton, etc. The facts are sufficiently set forth in the opinion of the Court.

BONTE & HENRY for plaintiffs. WORTHINGTON & MATTHEWS for defendants.

GHOLSON, J.

This is an action of assumpsit brought by the administratrix of Brewster G. Easton, deceased, against Ellis & Morton, to recover the amount of three checks, drawn in the name of B. G. Easton, after his death, by E. Easton. It is conceded that if there was no authority to draw the checks, the plaintiff is entitled to recover. The question, whether there was such authority, and whether it continued after the decease of B. G. Easton, is the matter of controversy which has been submitted to be tried by the Court.

The first proposition depends on the genuineness of the paper offered in evidence, in these words:

" *Cincinnati*, June 5th, 1849.

" Messrs. Ellis & Morton will be authorized to pay any checks signed by E. Easton for me in my absence, and he will be fully authorized to attend to all my business transactions with you.

(Signed,) B. G. EASTON."

Upon consideration of the facts and circumstances developed in this case, and notwithstanding the opinion or belief to the contrary, of two witnesses acquainted with the handwriting of B. G. Easton, I find that he did execute the paper which has been read, and had before his death authorized his brother E. Easton to sign for him checks on the defendants. The grounds upon which this

conclusion has been reached need not be stated.  To decide upon issues of fact of this description, is a disagreeable duty, which should not be increased by attempting to give reasons for the conviction produced by evidence on the mind, reasons which, in case of the trial of issues of fact by oral testimony, though strongly felt by those who hear the testimony, it is difficult to communicate in language, and if communicated would frequently be unsatisfactory in the minds of others.

Having arrived at the conclusion that E. Easton had the requisite authority in the life-time of B. G. Easton, the next enquiry is, whether it continued after his decease.

I do not understand the general rule of the common law, that the authority of the agent ceases at the death of the principal, to be disputed.   The rule, and the reason for it, have been distinctly recognized in Ohio.

"Where delegated authority is exercised, it must be exercised in the name of the principal.   Where one acts as the attorney of another, the act should purport to be the act of the constituent.

" As the act of the agent acquires validity, because it is the act of the constituent, his power ceases when the capacity of the principal ends." Lessee of Anderson *v.* Brown, 9 *Ohio,* 151.

"It cannot be doubted, that as a general rule the authority of the attorney ceases upon the death of the principal. If then, after the death of the principal, the attorney makes an entry, it is done without authority and of course void." Lessee of Wallace *v.* Saunders, 7 *Ohio,* 1 *pt.* 173, and so also 20 *Ohio,* 185 ; *Wright,* 594.

Under this rule of law, then, the authority of E. Easton, to act for B. G. Easton after his death, cannot be main-

tained, unless this case be embraced, as claimed by the defendants, under some recognized exception to the general rule. At the time the defendants paid the checks, they had no knowledge of the death of B. G. Easton. It would appear to be fair that when one is invested with the authority of an agent to deal with a third person, such authority should be deemed to continue so long as the party, who acts or trusts on the faith of it, remains uninformed of a change. And we know, that this rule is applied in some cases of agencies, actual or implied, with much stringency.

It is upon this principle that the case of Cassidy *v.* McKenzie, (4 *Watts & Serg.* 282,) appearsto have been decided. That case has been much pressed on my consideration in the argument, and strongly sustains the ground taken for the defendants, that the general rule, as to the effect of the death of the principal, on the authority of the agent, does not apply in such a case as the present.

I find the law on this subject thus stated, (*Kent,* 2 *Com.* 644.) "In case of a lawful revocation of the power by the act of the principal, it is requisite that notice be given to the attorney: and all acts *bona fide* done by him under the power, prior to the notice of the revocation, are binding upon the principal. This rule is necessary to prevent imposition, and for the safety of the party dealing with the agent: and it was equally a rule in the civil law. Even if the notice had reached the agent, and he concealed the knowledge of the revocation from the public, and the circumstances attending the revocation were such that the public had no just ground to presume a revocation, his acts, done under his former power, would still be binding upon his principal."

On a subsequent page, (646,) in the same volume, he

10

says: "By the civil law and the law of those countries which have adopted the civil law, the acts of an agent done *bona fide* after the death of the principal, and before notice of his death, are valid and binding on his representatives. But this equitable principle does not prevail in the English law: and the death of the principal, is an instantaneous and absolute revocation of the authority of the agent, unless the power be conferred with an interest."

These remarks, the Judge delivering the opinion in Cassidy *v.* McKenzie, refers to, as *the doubts expressed by Chancellor Kent*, and says that he cannot believe, notwithstanding those doubts, that the common law is so unreasonable.

If the law be as stated by Kent, it is not for me to say whether it be reasonable or unreasonable: Kent himself considers the rule of the civil law to be more equitable; this may be so; but that does not make it our law. It is my simple duty to find out, if I can, and declare what is the law of Ohio on the subject.

The rule, first quoted from Kent, requiring a notice of the revocation of a power to be given by the principal to the agent or attorney, has no application to such cases as the present. The responsibility on the principal which is imposed by that rule, is the result of his neglect of the duty which it imposes of giving notice. And it will be found, generally, where the liability of a principal, in respect of the acts of an agent, continues after the relation has been determined, that it is confined to those cases, where there is a duty of giving notice imposed by law, or the circumstances, and there is a default in so doing. Thus, two men unite in a partnership which constitutes a mutual agency: on its dissolution, if no notice be given, each will still continue liable for any acts of the other in respect of

the same business. But that same partnership may employ a clerk to transact their general business, and thus give him credit to buy goods, or even borrow money on their account; may discharge him from their employ; and without any notice to those with whom they have been dealing, their responsibility for his acts ceases from the moment of his discharge.

There is a mutual agency created by a contract of partnership, and the rule, that the death of one partner operates as an immediate dissolution and termination of the agency, from the moment of death, whether known or not, is laid down by very high authority, and seems to be opposed to the decision in 4 *Watts & Sergeant,* and to sustain the distinction between the civil and common law as stated by Kent.

In *Story on Partnership,* (*Sec.* 319) it is said: "And "here the question may arise, as to the time, from which "the dissolution by the death of any partner, takes effect, "whether it be from the occurrence of that event, or from "the period the other partners have notice thereof. At the "common law, the doctrine seems clearly established that it "takes effect in respect, as well to the other partners, as to "third persons, from the time of death, without any consid- "eration, whether they have notice thereof or not. The "Roman law, on the other hand, pursued a different course, "and as between the partners themselves adopted the same "rule which it applied to the cases of agency or mandate; "that is the partnership is not dissolved by the death of any "partner, until the other partners have due notice thereof."

I do not find that the decision in 4 *Watts & Serg.* has been sanctioned by other authorities, and do find respectable ones to the contrary, and some of them very directly

in point. (2 *Humph.* 350: 10 *N. Hamp.* 156 : 2 *Greenlf.* 18.) In some of the States the rule of the civil law has been adopted by legislation. And this itself is good authority to show that the common law was different. The reasons for the general rule, that the authority given by any man, ceases at his death, as found in Hunt *v.* Rousmanier, (8 *Wh.* 174,) and in the cases cited from our own reports, clearly show, to my mind, that the question of notice, or knowledge, cannot affect its operations. There is however, one exception distinctly recognized in this country, and by the very language used in the authorities any other is excluded. It is thus stated in 8 *Wheaton,* 203 : " The gen- " eral rule that a power ceases with the life of the person " giving it, admits of one exception. If a power be coupled " with an interest, it survives the person giving it, and " may be executed after his death." And the only enquiry which remains, is whether the power in this case was coupled with an interest, in the sense in which those words are used. The meaning of those words is explained in several cases. " The interest which can protect a power after the death of a " person who creates it, must be an interest in the thing " itself," not " an interest in that which is to be produced by " the exercise of the power." (8 *Wheat.*) It " must be " an interest in the thing itself which is the subject of the " power, and not in the proceeds or avails of such thing." (7 *Barbour S. C.*)

In the present case, the money on deposit with Ellis & Morton, unquestionably at the time the authority was given the individual property of B. G. Easton, must be considered the thing, which was the subject of the power. It is clear, to my mind, that no interest in that money passed to E. Easton. It may be, that, by the exercise of the power,

he would have derived a benefit, under the business arrangements existing between him and B. G. Easton. The exercise of the power might have brought the money of B. G. Easton, as capital into a business, in the profits of which, under the articles of agreement shown in evidence, E. Easton was entitled to share; but there was nothing in the transaction, to transfer to E. Easton an interest in the money. He could only act in reference to it as the agent of B. G. Easton.

It is therefore my conclusion, that this case has not been brought within the only exception. I feel authorized to admit the general rule, that the authority of the agent ceases at the death of the principal. I believe, that the defendants in this case had no knowledge of the death of the principal, and acted with entire good faith. The general rule of law, to be applied in this case, may, therefore, operate hardly, as other general rules not unfrequently do; but Courts are not authorized to engraft exceptions to meet the hardships of particular cases.

I must find the issue in this case for the plaintiff.